IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JOHN COSTELLO, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 5:12cv00025 |
| v. ) | |
| ) | |
| ANN MALCOLM, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Before the court is defendant Ann Malcolm's **Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement (Dkt. # 2)**, in which Malcolm seeks to dismiss the claims brought by plaintiffs John, Ashley, and Lindsey Costello (collectively, "Plaintiffs"). This matter has been fully briefed, and the court heard oral argument on May 8, 2012. Because Plaintiffs' complaint fails to state plausible claims for relief and amendment would be futile, Malcolm's motion to dismiss must be granted.

I.

This case involves a landlord-tenant dispute between Malcolm, the landlord, and Plaintiffs, the tenants, regarding the presence of mold in a rental unit in a rental unit in Fairfax, Virginia. On multiple occasions, Plaintiffs complained to Malcolm about a water leak in the air conditioning unit and concerns regarding mold, but Malcolm never corrected the problem. After a mold complaint in May 2011, Malcolm sent Plaintiffs a notice of termination of the lease agreement on May 24, 2011, and directed Plaintiffs to vacate the property by June 30, 2011. In June 2011, Plaintiffs again informed Malcolm of mold in the air conditioning filter, but Malcolm did not take corrective action. On June 23, 2011, Malcolm again communicated notice of

termination of the lease, effective August 31, 2011. A letter from Malcolm dated August 26, 2011, stated that Plaintiffs were in violation of the lease agreement by failing to vacate the premises by June 30, 2011, and that Malcolm was considering them hold-over tenants. Plaintiffs vacated the premises by August 31, 2011.

Plaintiffs filed a Warrant in Debt in the General District Court of Warren County on September 8, 2011, and subsequently filed a Bill of Particulars. The Bill of Particulars alleges claims under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., and state-law claims under the Virginia Fair Housing Law ("VFHL"), Va. Code Ann. § 36-96.1 et seq., and the Virginia Residential Landlord and Tenant Act ("VRLTA"), Va. Code Ann. § 55-248.3 et seq. The FHA claims assert that Malcolm failed to provide reasonable accommodation for Plaintiffs due to exposure to mold and mold spores in the rental unit and retaliated against Plaintiffs because of their repeated requests for reasonable accommodation.

After receiving the Bill of Particulars, Malcolm removed the matter to this court pursuant to 28 U.S.C. § 1441 because Plaintiffs' FHA claims arise under the laws of the United States and their remaining state-law claims form part of the same case or controversy. Consequently, Plaintiffs' FHA and state-law claims, and Malcolm's motion to dismiss those claims, are currently pending before this court based on federal question and supplemental jurisdiction. See 28 U.S.C. §§ 1331 and 1367(a).

In her motion to dismiss, Malcolm asserts that Plaintiffs' FHA claims must be dismissed because Plaintiffs do not allege that they are disabled or members of a protected class in order to sustain claims based on reasonable accommodation or retaliation under the FHA. Furthermore, Malcolm argues that remediation of mold is not a plausible basis for a claim of discrimination under the FHA. Plaintiffs' VFHL claim mirrors their claims under the FHA, and Malcolm

asserts that the allegations in the Bill of Particulars are equally deficient as to this state-law claim. Citing Isbell v. Commercial Inv. Assocs., Inc., 273 Va. 605, 609, 644 S.E.2d 72, 73 (2007), Malcolm argues that the VRLTA is a statute designed to define the contractual relationship between landlords and tenants and did not abrogate the common law rule that a landlord is not liable in tort for a tenant's personal injuries caused by the landlord's failure to repair premises under the tenant's control and possession. Malcolm further contends that Plaintiffs' damage claim is entirely speculative. Finally, Malcolm requests attorney's fees as a prevailing party pursuant to 42 U.S.C. § 3613(c) if the court dismisses Plaintiffs' FHA claims.

In their memorandum in opposition, Plaintiffs state that the Bill of Particulars was filed in Virginia state court and, as such, was not required to meet the strictures of the Federal Rules of Civil Procedure. Plaintiffs claim Malcolm violated the FHA by failing to provide reasonable accommodation – remediation of mold in the rental unit – and by retaliating against Plaintiffs for their repeated requests for reasonable accommodation. According to Plaintiffs, mold problems in the rental unit caused them to have severe allergic responses, making it hard for them to breathe. Such breathing difficulties inhibit one's ability to work, cause severe headaches, and prevent one from breathing without difficulty, resulting in a handicap that is protected by the FHA. In support of this argument, Plaintiffs rely on the definition of "disability" under the Americans with Disabilities Act ("ADA"), which includes a physical or mental impairment that substantially limits a "major life activity" like breathing. 42 U.S.C. § 12102(1) and (2). In support of their state-law claims, Plaintiffs assert that they were injured as a result of Malcolm's negligence in maintaining the rental unit's heating and cooling system and that Malcolm violated the VRLTA by failing to maintain the premises in such a condition so as to prevent the accumulation of mold. Finally, Plaintiffs state that the Bill of Particulars contains factual

3

allegations sufficient to provide Malcolm with notice of their claims, so the claims should not be dismissed. In the alternative, Plaintiffs request leave to amend their claims to better comply with the Federal Rules of Civil Procedure.

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

## III.

Plaintiffs' Bill of Particulars asserts both federal and state-law claims. Because this matter is before the court on federal question jurisdiction over the FHA claims and supplemental jurisdiction over the corresponding state-law claims, the court will first address Plaintiffs' FHA claims. In the Bill of Particulars, Plaintiffs assert two claims under the FHA: (1) Malcolm violated the FHA by failing to provide reasonable accommodation – remediation of mold in the

4

rental unit – and (2) Malcolm violated the FHA by retaliating against Plaintiffs for their repeated requests for reasonable accommodation.

The purpose of the FHA is to provide fair housing throughout the United States. 42 U.S.C. § 3601. The FHA is meant to protect people, including those with disabilities, in housing markets from discrimination based on a physical or mental handicap and should be construed broadly.[1] <u>Matarese v. Archstone Pentagon City</u>, 795 F. Supp. 2d 402, 430 (E.D. Va. 2011), <u>aff'd in part, vacated in part on other grounds</u>, No. 11-1973, 2012 WL 626460 (4th Cir. Feb. 28, 2012)). A "discriminatory housing practice" means an act that is unlawful under §§ 3604, 3605, 3606, or 3617 of Title 42. 42 U.S.C. § 3602(f). Section 3604 is the applicable provision in this case because it is entitled "Discrimination in the sale or rental of housing and other prohibited practices." Section 3604 makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap" of that person, a person residing in the dwelling, or a person associated with that person. 42 U.S.C. § 3604(f)(2). "Discrimination" in this context includes (1) "a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises," and (2) "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodation may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3). A claim for retaliation under the FHA is brought under 42 U.S.C. § 3617, which states that "[i]t shall be unlawful to coerce,

---

[1] Under Title 42, a person has a "handicap" if he or she has (1) "a physical or mental impairment which substantially limits one or more of such person's major life activities," (2) "a record of having such an impairment," or (3) been "regarded as having such an impairment." 42 U.S.C. § 3602(h). Major life activities include: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

5

intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected" by §§ 3603, 3604, 3605, or 3606.

### A. Reasonable Accommodation Under the FHA

Plaintiffs' first FHA claim alleges that Malcolm violated the statute's reasonable accommodation requirement by failing to remediate mold in the rental unit. The Fourth Circuit Court of Appeals has held that in order to assert a claim for failure to provide reasonable accommodation under § 3604(f)(3), a plaintiff must plead facts showing that the requested accommodation was "(1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." Bryant Woods Inn, Inc. v. Howard County, Md., 124 F.3d 597, 603 (4th Cir. 1997). The United States District Court for the Eastern District of Virginia recently cited Bryant Woods for the elements of a cause of action for failure to provide reasonable accommodation and stated that "[a] reasonable accommodation is one that is both efficacious and proportional to the costs to implement it." Costello v. Johnson, No. 3:11-198, 2011 WL 3820890, at *4 (E.D. Va. Aug. 29, 2011) (internal quotations omitted), aff'd, No. 11-2234, 2012 WL 1072793 (4th Cir. Apr. 2, 2012)). "A necessary accommodation is one that is directly linked to the equal opportunity provided to the disabled person . . . ." Id.

The Costello case involved a landlord-tenant dispute over reasonable accommodation and retaliation claims under the FHA. Id. at *1. The tenant claimed the landlord did not make reasonable accommodations by failing to remediate mold and mildew problems in the tenant's apartment. Id. Although the statute of limitations barred the tenant's claims, the court held that the claims would fail on substantive grounds as well, stating that "the failure to remediate mold

6

is not a plausible basis for a claim of discrimination under the Fair Housing Act . . . [because l]andlords have an obligation to remediate mold for *all* tenants." Id. at \*5 (emphasis in original). Consistent with this holding, other district courts have held that a landlord's failure to remediate mold, without more, is not actionable under the FHA. See McManus v. Cherry, No. 1:08-00110, 2010 WL 5638108, at \*5 (N.D. Fla. Nov. 19, 2010) (dismissing complaint because "allowing mold to form in [p]laintiff's apartment does not demonstrate discrimination based upon a disability), adopted by, No. 1:08-00110, 2011 WL 240816 (N.D. Fla. Jan. 24, 2011); Lee v. McCreary, No. 1:09-2271, 2010 WL 925173, at \*5 (N.D. Ga. Mar. 8, 2010) (holding mold remediation is an accommodation already required of landlords for non-handicapped residents and not a violation of FHA); see, e.g., Lee v. A & W Pritchard Enters., Inc., No. 3:07-514, 2009 WL 3484068, at \*2 (W.D. Ky. Oct. 23, 2009) (holding "if a person without the plaintiff's disability would be harmed in the same manner as a person with the plaintiff's disability, there is no claim under the FHA").

At oral argument, Plaintiffs cited Matarese v. Archstone Pentagon City and Ogundimo v. Steadfast Property & Development, Inc., No. 1:09-00231, 2009 WL 650550 (E.D. Cal. Mar. 12, 2009), for the proposition that remediation of mold can support a claim under the FHA. Matarese was a landlord-tenant dispute with various FHA allegations. Matarese, 795 F. Supp. 2d at 411-12. One of the tenant's claims was that the landlord retaliated against her in response to her requests for reasonable accommodation due to her sensitivity to chemicals. Id. at 442-43. The tenant claimed she suffered from breathing difficulties as a result of exposure to paint, smoke, and mold in a rental unit. Id. at 433. At various times for a period of almost four years, the landlord made certain accommodations due to the tenant's chemical sensitivities, such as not entering the tenant's apartment to paint on one occasion and offering accommodations to her at a

7

later time so the painting work could be completed.  Id. at 435.  After a bench trial, the court found that the landlord retaliated against the tenant by raising the rent "to exorbitant rates" and refusing to renew the tenant's lease after the tenant's "long history" of requests for reasonable accommodations for her chemical sensitivities.  Id. at 442-43.

Ogundimo likewise involved the request by a tenant impaired by breathing issues for mold remediation.  Ogundimo, 2009 WL 650550, at *1-3.  The tenant suffered from asthma and a mobility impairment requiring the use of a wheelchair, and her son also suffered from asthma.  Id. at *2.  The tenant's apartment flooded, which created a "serious and advanced state of mold" in the residence.  Id.  The landlord remediated some of the mold on a wall and told the tenant to scrub the wall with bleach.  Id. at *3.  The tenant informed the landlord she could not clean the wall because of her mobility impairment and was told to have her children do it.  Id.  The landlord later suggested that the tenant should move.  Id.  The court concluded that the tenant's allegations that the landlord's conduct exacerbated her asthma and mobility impairment stated a claim for failure to provide reasonable accommodation under the FHA.  Id. at *4-5.[2]

Matarese and Ogundimo are distinguishable from the facts of this case and cases such as Costello because there is no allegation here that plaintiffs suffer from a handicap causing the failure to remediate mold to be discriminatory based on their handicap.  The Costello court distinguished Matarese and Ogundimo because those cases involved requests by a tenant for reasonable accommodation of that tenant's handicap.  The tenant in Matarese requested the remediation of mold as an accommodation due to her chemical sensitivities to paint fumes and tobacco smoke, and the court in that case focused on the tenant's sensitivities to paint fumes and smoke, relegating the issue of mold remediation to a footnote.  Costello, 2011 WL 3820890, at

---

[2] The tenant in Ogundimo was proceeding pro se, which influenced that court's decision to construe her pleading liberally.  2009 WL 650550, at *1-2.  In this case, although Plaintiffs filed the Warrant in Debt pro se, counsel for Plaintiffs drafted the Bill of Particulars that is before the court.

*6 n.2. Nor does Ogundimo stand for the proposition that failure to remediate mold alone gives rise to an FHA claim. In Ogundimo, "the plaintiff alleged that her *mobility* impairment did not permit her to *continue* to remediate the mold in her apartment and that her landlord's refusal to accommodate her mobility impairment negatively affected her asthma." Id. (emphasis in original). In contrast to the plaintiffs in Matarese and Ogundimo, Plaintiffs do not contend that they suffer from a physical or mental handicap requiring the landlord to provide reasonable accommodations. Costello and other similar cases clearly state that the remediation of mold is a duty owed to all tenants and does not, standing alone, support a claim for the discriminatory failure to provide a reasonable accommodation under the FHA.

### B. Retaliation Under the FHA

Plaintiffs' second FHA claim alleges that Malcolm violated the statute by retaliating against them for their repeated requests for mold remediation. A claim for retaliation under the FHA is brought under § 3617, which states that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected" by §§ 3603, 3604, 3605, or 3606. 42 U.S.C. § 3617. "To prevail, [p]laintiffs must prove that [d]efendants took adverse action against them in retaliation for their protected activity." Matarese, 795 F. Supp. 2d at 442. Under Fourth Circuit precedent, to establish a claim for retaliation under the FHA, Plaintiffs must prove four elements: "(1) the plaintiff was engaged in protected activity; (2) the defendant was aware of that activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action." Id. The alleged

9

protected activity in this case is the request for reasonable accommodation – the remediation of mold – as necessary for the equal opportunity to use and enjoy the rental unit. See § 3604(f)(3).

The first element Plaintiffs must prove is that their request for reasonable accommodation was a protected activity under the FHA. As discussed above, Costello and similar cases hold that a request to remediate mold, standing alone, is not a request for reasonable accommodation under the FHA because landlords have a duty to all tenants to remediate mold in rental units. In this case, there is no suggestion that plaintiffs suffer from a handicap which Malcolm must reasonably accommodate by ridding the apartment of mold. The presence of mold in a leasehold may spawn other claims, but absent more than is alleged here, a claim for discrimination and retaliation under the FHA is not actionable.

### C. Amending the Bill of Particulars

Plaintiffs' two claims under the FHA, for reasonable accommodation and retaliation, both fail to state plausible claims for relief as a matter of law. Plaintiffs have requested the opportunity to amend, but the court finds that amendment would be futile in this case because nothing in the Bill of Particulars, briefs, or statements at oral argument persuades the court that Plaintiffs asked for any other accommodation besides the remediation of mold in the rental unit. There is no suggestion that Plaintiffs, unlike those in Matarese and Ogundimo, were particularly sensitive to mold or otherwise handicapped. Consequently, any amendment to Plaintiffs' FHA claims will be unable to transform those claims into plausible claims for relief under the law.

### D. Attorney's Fees as a Prevailing Party

In the briefs and at oral argument, Malcolm has asserted that if she is the prevailing party regarding Plaintiffs' FHA claims, she will request attorney's fees and costs pursuant to § 3613(c). Because Plaintiffs' FHA claims fail as a matter of law, Malcolm may be entitled to

10

reasonable attorney's fees and costs, and the court will consider whether such an award is warranted.

Section 3613(c) states that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). However, because the FHA is a civil rights statute, prevailing defendants should be treated differently than prevailing plaintiffs. Bryant Woods, 124 F.3d at 606. Thus, the United States Supreme Court has held that a prevailing defendant may receive fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978).[3] Furthermore, the Supreme Court has noted that a district court should "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Id. at 421-22. If "a case is not absolutely groundless, an award of attorney's fees is not compelled." Hunt v. Lee, 166 F. App'x 669, 671, 2006 WL 26115, at *2 (4th Cir. Jan. 5, 2006).

In Bryant Woods, the Fourth Circuit reviewed a district court decision not to award attorney's fees and costs to a prevailing defendant in a case involving claims under the FHA. The district court held that the plaintiff "cited numerous cases decided under the Fair Housing Act as authority for its litigation position . . . [and] a reasonable legal basis existed for [plaintiff's] initiation and pursuit of its action . . . ." Bryant Woods, 124 F.3d at 607 (internal quotations omitted). The Fourth Circuit affirmed the lower court's decision. Id.

In this case, the court exercises its discretion not to award attorney's fees to Malcolm. As in Bryant Woods, Plaintiffs cited a few FHA cases to support their position. While the court

---

[3] The court in Bryant Woods stated that the standard espoused by the Supreme Court in the Christiansburg case should apply to FHA actions because the FHA is meant to prohibit discrimination and "draw[s] on the same policies attending Title VII of the Civil Rights Act . . . ." 124 F.3d at 606.

11

believes that Matarese and Ogundimo are distinguishable, the existence of this precedent, and Plaintiffs' reliance thereon, does not render Plaintiffs' FHA claims to be so utterly frivolous and without foundation as to justify an award of attorney's fees. Accordingly, the court will exercise its discretion to not award attorney's fees to Malcolm as a prevailing party under § 3613(c).

**IV.**

This case is before the court on federal question jurisdiction over Plaintiffs' FHA claims against Malcolm and supplemental jurisdiction over Plaintiffs' remaining state-law claims. As discussed above, both of Plaintiffs' FHA claims fail as a matter of law because remediation of mold, standing alone, does not constitute an actionable request for accommodation under the FHA. At its core, this case is a landlord-tenant dispute that belongs in state court. As Plaintiffs have failed to state plausible claims for relief under the FHA, the court will not exercise supplemental jurisdiction over their remaining state-law claims and will remand the matter to state court.

At oral argument, both parties conceded this matter should have originated in the General District Court of Fairfax County, but it was removed here from the General District Court of Warren County. According to the parties, there was a pending motion to transfer venue to the General District Court of Fairfax County, but due to competing federal and state procedural rules, the case was removed to this court before the General District Court for Warren County could rule on the transfer motion. Thus, the court must decide whether to remand and transfer this matter to the General District Court of Fairfax County, a different state court than where the action originated.

Under Title 28, a district court has the authority to transfer cases to other federal districts and remand cases to state court. A district court "may transfer any civil action to any other

12

district or division where it might have been brought or to any district or division to which all parties have consented," 28 U.S.C. § 1404(a), and may remand a case to the state court from which it was remanded. 28 U.S.C. § 1447(d). "'Remand' means 'send back'. It does not mean 'send elsewhere.' The only remand contemplated by the removal statute is a remand 'to the [s]tate court from which it was removed.'" Allied Signal Recovery Trust v. Allied Signal, Inc., 298 F.3d 263, 270 (3rd Cir. 2002) (quoting Bloom v. Barry, 755 F.2d 356, 358 (3rd Cir. 1985)).

In Allied Signal, a suit was filed in Florida state court and then removed to the United States District Court for the Middle District of Florida. Id. at 265-66. The Middle District of Florida transferred the case to the United States District Court for the District of Delaware. Id. The District of Delaware then ordered remand to Delaware state court. Id. at 266. The Third Circuit Court of Appeals vacated this remand order to Delaware state court and remanded the case back to the District of Delaware with authority to further remand the matter to the Florida state court where the claim originated. Id. at 271.

In a similar case, the plaintiffs filed suit in the Eighteenth Judicial District for the Parish of Iberville, State of Louisiana, and the defendants removed the matter to the United States District Court for the Middle District of Louisiana. Thompson v. Conoco Inc., No. 1:94-199, 1994 WL 1890836, at *1 (N.D. Miss. Dec. 13, 1994). The Middle District of Louisiana then transferred the matter to the United States District Court for the Northern District of Mississippi. Id. Concluding that the case was improperly removed, the Northern District of Mississippi decided that the appropriate remedy was to remand the matter back to the Eighteenth Judicial District Court for the Parish of Iberville where the suit was originally filed. Id. at *6 (applying Bloom, 755 F.2d at 358).

13

While these cases are not directly reflective of the issue here, they do stand for the general proposition that a case removed to federal court and then subsequently remanded to state court should be remanded to the state court where it was originally filed. Therefore, because Plaintiffs' Bill of Particulars fails to state plausible claims for relief under the FHA and the court declines to exercise supplemental jurisdiction over the remaining state-law claims, this matter will be remanded to the General District Court of Warren County.

## V.

Accordingly, **IT IS ORDERED** that Malcolm's **Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement (Dkt. #2)** is **GRANTED**, and Plaintiffs' FHA claims for reasonable accommodation and retaliation are **DISMISSED WITH PREJUDICE.** Moreover, **IT IS FURTHER ORDERED** that Plaintiffs' remaining state-law claims are **REMANDED** to the General District Court of Warren County.

Entered: June 29, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

14